ALFRED GUADAGNO *vs.* LOUIS FOLCO.

MAY 23, 1939.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is an action of trespass on the case for seduction of the plaintiff's adult daughter.  In the superior court a jury returned a verdict for the plaintiff in the sum of $3500 and thereafter the defendant's motion for a new trial was denied by the trial justice.  The case is before us upon the defendant's exceptions to that ruling and to other rulings of the trial justice during the trial, and to portions of his charge to the jury.

The evidence for the plaintiff in general showed that his daughter had been performing certain housekeeping services for him and that a relationship of master and servant existed; that on divers occasions in 1935 the defendant, especially through promises of marriage, had carnal knowl-

edge of the plaintiff's daughter; that he gave her a ring as token of their betrothal; that, as a result of certain of these relations, the plaintiff's daughter gave birth to a girl child on June 14, 1936 at the Lying-In-hospital; and that the plaintiff, as a consequence of the alleged debauchery of his daughter by the defendant, suffered the loss of her services and was otherwise subjected to great humiliation and disgrace and also put to expense in caring for her.

The defendant's evidence admitted certain acts of intercourse with the plaintiff's daughter but placed them in 1934, at least a year previously to the times as alleged in the testimony for the plaintiff. The defendant also denied the paternity of the child of plaintiff's daughter and denied that any of his relations with the plaintiff's daughter were accomplished by the use of any force or promises of marriage on his part; but on the contrary he asserted that they were brought about mainly by the aggression or conduct of the plaintiff's daughter. There were many witnesses called and a great deal of other evidence was presented by both plaintiff and defendant. It is unnecessary to set out the facts in further detail, except to state that practically all of the material issues were the subject of sharply conflicting testimony.

The defendant's bill of exceptions contains seventeen separate exceptions, but they have been grouped and argued by the defendant as falling within seven questions of law, which he now raises. The first and fifth of these questions are based upon the defendant's contention that the trial justice erred in his charge by giving two different definitions of seduction which confused the jury. There is no merit in this contention because we find only one such definition in the charge. The trial justice defined seduction precisely as it appears in 2 Cooley on Torts (4th ed.) 39. To that definition he immediately added: "In this state it has been held that the gist of the action is the debauching of the daughter, and the consequent supposed loss of her services, or actual

loss of her services." This language appeared in a Massachusetts case that was quoted, apparently with approval, in *Silva* v. *Mills*, 47 R. I. 193. It referred to the gist of a similar action for seduction and is not in conflict with the above definition of the act of seduction.

But the defendant argues that the trial justice stated elsewhere that "the gravamen of the action is the debauching of the plaintiff's daughter" whereas, at common law, it was the loss of services. We find no such statement in the charge. The trial justice did say in the beginning: "The gravamen of the offense of seduction is the interference with the relationship of master and servant, which must be shown to have existed between the plaintiff and the daughter seduced." This is far from stating a different and confusing definition of seduction and is consistent with its definition at common law and the language which was quoted by the trial justice from *Silva* v. *Mills, supra.*

The second question is whether the trial justice erred in admitting certain evidence concerning payments by the plaintiff for the support of his daughter's child. The particular testimony involved under this question appeared in two questions as follows: "Q. 110. Do you know of your own knowledge whether your father has paid out any money for that child? A. Yes. Q. 113. Whether, or not, you have seen your father pay out any money for the support of that child, A. Yes."

The trial justice refused to grant the defendant's motion to strike out the answer to question 110; but later, in the absence of the jury, he granted the defendant's motion to strike out the answer to question 113, stating that he would rule that the plaintiff could not recover for alleged support of the child. He failed, however, to notify the jury upon its return that this evidence should be ignored, and thus both answers remained in evidence. Undoubtedly it would have been better practice to have stricken out both answers and to have notified the jury to ignore such evidence. However,

we are of the opinion that the error, if any, was not prejudicial. The questions were not followed up and the amount of payments was not asked or given.

No reasonable implication appears in the evidence to indicate that the jury were misled thereby to include in their verdict any conjectured amount for the child's support; or that they refused to follow the court's specific charge that the plaintiff was not entitled to recover anything for the support of his daughter's child. We are of the opinion that the evidence did not play any influential part in the verdict and that the error, if any, was not prejudicial to the defendant.

The defendant's third and fourth questions relate to whether the trial justice erred in admitting testimony of payments made by the defendant, through the Department of Public Aid, to the plaintiff's daughter for support of herself and child and to the hospital for her lying-in expenses. The defendant contends that the payments were made by him under duress or as a compromise to buy his peace without publicity, so as not to jeopardize his marriage to his present wife, to whom he was then engaged; that these payments were accompanied by his express denial of paternity or any liability for the support of the plaintiff's daughter or child; and that evidence of payments made under such conditions was not admissible to prove liability, for the same reasons of public policy that render such evidence inadmissible in an original bastardy proceeding to prove the fact of paternity.

The defendant's contention in this regard would raise the most important allegation of error before us, were it not for the fact that the transcript of evidence discloses that substantially similar testimony was given by the defendant in his cross-examination, without objection. In view of the fact that the same or substantially similar testimony so appeared without any objection by the defendant, and without any timely motion to strike it out, it is un-

necessary to consider these questions, as the error, if any, became harmless to the defendant.

The sixth and seventh questions raised by the defendant may be handled together since both relate to the refusal of the trial justice to grant the defendant's motion for a new trial. The evidence in the case is extensive and sharply conflicting upon practically all of the material issues. Therefore the credibility of the witnesses became an important matter. The jury had an opportunity to see and hear the witnesses and the verdict has been expressly approved by the trial justice. We have examined the evidence and the decision of the trial justice and we find nothing therein to indicate that he failed to perform his independent duty under the law or that he misconceived or overlooked material evidence. On the contrary he analyzed the material testimony for each party, weighed it independently and pointed out that the jury's verdict as to liability was the only proper one upon the evidence.

As to the damages, the jury were entitled, under the charge of the court, to award both compensatory and punitive damages. The trial justice specifically held that the verdict was just and that the damages awarded were within reason. He also observed that the defendant "created a very unfavorable impression upon the Court and I think he must have offended against the jury's common sense, and against their sense of decency. The evidence offered by him did nothing to better that situation"; and that the testimony of the defendant and his witnesses "must have left such an atmosphere about the case that the defendant cannot complain if the jury exercised its right to impose punitive damages."

Apparently the jury and trial justice believed that the evidence and conduct of the defendant was so extremely shocking to a proper sense of morality and decency as to warrant more punishment than might be reasonable in the ordinary case. Ordinarily the defendant's financial con-

dition is an important, though not the only, factor to be considered. See *Norel* v. *Grochowski*, 51 R. I. 376.

However, the evidence in the instant case was none too clear or complete in this regard and, as such, apparently was not stressed at the trial or in the argument before us. Considering all these circumstances, and in the absence of any opportunity to see and hear the witnesses, and in view of the specific approval by the trial justice of the justness of the verdict and the amount of the award, and considering our inability to point definitely in the record to elements and evidence which would show that the amount of the damages are clearly excessive, we cannot say that the trial justice was clearly wrong in failing to order a remittitur or to grant a new trial on that ground.

The defendant further attempted upon his motion for a new trial to impeach the verdict by means of certain affidavits, purporting to show that the jury had discussed the case with other persons and had reached a verdict so quickly as to indicate clearly that prejudice or passion prevented the defendant from having an impartial trial.

The question of thus impeaching a verdict of the jury has been considered in *Bourre* v. *The Texas Co.*, 51 R. I. 254 and *Phillips* v. *The Rhode Island Co.*, 32 R. I. 16 and other cases, As stated therein, such affidavits are generally excluded on the ground of public policy and as violating the general rule of hearsay testimony. We find nothing in the evidence in this case to require an exception to that rule, and nothing to indicate that the verdict was the result of prejudice, passion, or a refusal of the jury to perform their duty as instructed by the court. As we cannot say from our inspection of the evidence that the trial justice, who expressly approved the verdict, was clearly wrong, the contentions under the defendant's sixth and seventh questions are not sustained.

All of the defendant's exceptions, therefore, are over-

ruled and the case is remitted to the superior court for entry of judgment on the verdict.

*William H. McSoley, William H. McSoley, Jr.,* for plaintiff.

*M. Louis Abedon, Frank W. Golemba,* for defendant.